May it please the Court, Gia Kim, appearing on behalf of Appellant Robert Dehaney. This morning I'd like to focus on the sentencing issues raised in the brief. These issues all basically stem from the interaction between the sentencing guidelines and the mandatory consecutive two-year sentencing provision for aggravated identity theft, 18 U.S.C. 1028-A, 1028-Big A. A defendant doesn't really get a guideline sentence in the true sense for 1028-A because of that mandatory sentence. 1028 offenses are not grouped with the underlying felony that they occur during and in relation to for guidelines purposes. And the statute specifically prohibits sentencing judges from adjusting under 3553-A the sentence on the underlying felony to account for the 24 extra months. Because of this mandatory sentence, the guidelines instruct courts not to apply any Chapter 3 enhancements such as acceptance or obstruction on the 1028 sentence. And a 1028-A sentence can't take into account the fact of criminal history for a client such as Mr. Dehaney who had zero criminal history points, it's just two years, plain and simple. So turning to the double-counting argument raised in the brief, the aggravated identity theft guideline, 2B1.6, in apparent recognition of the harshness and inflexibility of 1028-A's mandatory statutory penalty, specifically instructs sentencing courts not to apply any specific offense characteristic for the use, transfer, or possession of a means of identification for the underlying offense. Here, Mr. Dehaney's underlying offense was use of a false passport obtained by means of an unlawful statement when he presented his passport at LAX. And the false statements, if you look at the indictment, were pertaining to a name and a social security number of the real victim, and those two items are undeniably means of identification as defined in the statute, 18 U.S.C. 1028-D7. So we would argue that this, that enhancement, a four-level enhancement for use of a passport in 2L2.2, which applies to the use of the passport at LAX, falls within that double-counting program. And how do you respond to the Melendez case, which basically suggested that means of identification is distinguishable from the actual document itself? And in this particular case under 2L2.2, you clearly have a document, that is, an American passport, which is the gravamen of the offense. Yes, Your Honor. The Melendez case does distinguish between the name or number and the document on which it's placed. However, I think Mr. Dehaney's underlying offense here could be committed in several ways. You could, for instance, present a passport in your real name, but it was issued on the basis of, say, false citizenship evidence. You could present a passport in a completely fake, made-up name that was obviously based on fake, made-up documentation. Or, as in Mr. Dehaney's case, you could present a passport in the name of another real person using some of their means of identification. In the first two instances, you aren't guilty of 1028A. There would be no problem with you getting the 4-level enhancement because there is no double-counting. Only in the third instance here would you be subject to that and receive the enhancement. I think it's also important to note that in some commentary in the Guidelines itself to the Fraud Guideline 2B1.1, the Sentencing Commission seems to express some confusion as to what constitutes a means of identification. Oh, you're not suggesting the Sentencing Commission was confused. Perhaps in this case, yes. In this case, it indicates that. I guess we haven't done our homework on who the judges are. We have. Okay. In the commentary to the Fraud Guideline. With all respect. Yes, of course. There is a specific offensive characteristic in the Fraud Guideline that uses the term means of identification. It goes towards the sort of breeding conduct of using one means of identification to produce another. That was at issue in Melendrez. And in the commentary, the Commission states, we understand that means of identification is broadly defined in the statute, 1028D7, which is what we're looking at here. And therefore, it could be used to include such items as a driver's license, credit card, and bank loan. And, however, if you go back and look at the statute, statutory definition of means of identification, I don't believe driver's license would fall under that either. It says driver's license or state-issued identification number. And I think the or is meant to say driver's license number or identification number, in keeping with the rest of the statute. So the Sentencing Commission did say in that comment that indicated that a driver's license would be a means of identification in the sense that it was contemplating this specific offense characteristic. I think by analogy, it's not unreasonable to think that it may have thought that the passport, you know, as a matter of plain speaking, would be a means of identification and that enhancement would be captured by the double counting. I thought that the real intent was to focus in upon the special harm that's committed when you abuse a U.S. passport. I think the history of that particular guideline would suggest that fact, as opposed to the use of the numbers, which is essentially a means of identification. But can I ask you another question? In the sentencing memorandum that was submitted on behalf of Mr. Dehaney, you acknowledged that the four-level enhancement should be applied. Not only did you not raise an objection, but you basically said to the judge apply the four-level enhancement. And I'm interested to know whether you waived the argument that you have now or under Ninth Circuit law forfeited. The government does argue that this argument was waived. However, I believe under Ninth Circuit law, post-Olano Ninth Circuit law, this argument was forfeited and not waived. The comparable case here also in the sentencing case was where a defendant agreed to the PSR's characterization of an offense as an aggravated felony. And looking at the definition of waiver in Olano, which is a high bar, it's an intentional relinquishment of a known right. And then this court's subsequent en banc decision in Perez, which was not a sentencing case, but it was a jury instruction, sort of invited error case. This court concluded in U.S. v. Jimenez that merely assenting, even if affirmatively assenting is not enough unless there's some indication that evidence in the record that trial counsel was aware of this argument but for some reason chose to forego making it or whether there was some strategic reason or not for that. But there's nothing in this record that this was anything but an argument that was overlooked by trial counsel and not affirmatively waived as is required under Ninth Circuit law on waiver. And I would also argue that the specific harm of using a U.S. passport is double-counting under just general double-counting principles because 1028A does seek to punish that harm, as this court indicated in United States v. Maciel Alcala. Although we may commonly think of 1028A as punishing the harm, the financial harm to individual victims of identity theft, the legislative history indicates that national security concerns and the particular security concern mentioned in Maciel Alcala of someone boarding a plane to the U.S. using a genuine passport that was obtained by unlawful means was also a paramount concern in enacting that statute. I see that my time is running short, so... Do you want to reserve? Yes. Any questions? Okay. All right. You may reserve. You may proceed. Good morning, Your Honors. May it please the Court. Jerry Yang on behalf of the United States. Since counsel addressed primarily the passport enhancement issue, I'll start my analysis there. As a threshold matter, defendant has waived his passport-counting objection on the appellate level because he invited the error, to the extent it was an error, invited the error at the district court level. Specifically, defendant adopted the plus-4 enhancement in his sentencing papers and also adopted it again at the hearing. This idea of this forfeiture versus waiver distinction, I would respectfully argue to the Court that although Olano may be interpreted to now require a waiver, I'm sorry, a knowing relinquishment of the right, and that defendant here may have only forfeited the right, I would respectfully argue that in the United States v. Contreras case, which I would cite as 593 F. 3rd, 1135, this Court, that was an en banc decision, this Court noted that notwithstanding the panel's wrong application of, I'm sorry, a wrong holding post an amendment to a obstruction guideline there, that that nonetheless continues to remain binding law on the circuit. So to the extent that Olano somehow supersedes all of the law on the forfeiture versus waiver argument, I would respectfully argue that Flores and Hernandez continues to govern this Court and that waiver is the appropriate standard here. Nonetheless, there is no error here, because the use of a means of identification as set forth in the government's paper, I won't get into too much of the details, but the use of a means of identification, the definition of means of identification does not include passport. It includes passport numbers as defined by 18 U.S.C. 1028A7, but it specifically does not include passport numbers. By contrast, with respect to driver's licenses, for example, 1028A7 specifically includes not only the driver's license document itself, but also the driver's license number. And here what we have as applied to this case, we have defendant not only was convicted of the passport charge, but was also convicted of the 1028A charge. And the 1028A charge charged defendant not with using a means of identification, i.e., the passport number that belonged to a real person, but rather the passport that belonged to a real person. And under that, there is no double counting on the face of the guidelines. There's also no double counting in a general sense, in the sense that under the Gallegos case, double counting only occurs when two conduct have been fully accounted for under two guidelines. Here, that's not the case. As the Court noted, the 1028A is intended to cover the aggravated identity theft, i.e., that the harm that's caused to a real person. By contrast, the passport charge was intended to punish defendant's use of a passport that was issued by the United States. So there's no double counting here, because both harms are distinctly different. There may be some overlap, one could argue, but nonetheless, they are different, and they're not fully accounted for. So what was the evidence at trial that Mr. Dehaney knew that Craig Walker was a real person? The evidence at trial was, one, that defendant used that identity for every purpose in life, including attaining driver's licenses, passports, opening a – I'm sorry. There was no evidence that was presented of opening of credit, but also used it for employment purposes, used it to present to law enforcement. So why does that give rise to the inference that he knew that Craig Walker was a real person? The inference is that when someone uses an identity to that extent, in that scope, that it was more likely that the identity belonged to a real person, that it was a real identity rather than one that was just fabricated. Actually, you're – you had more evidence than that, frankly. You had an affidavit that was given to Mr. Dehaney when he was in the Baltimore jail, which described why he was there. It's an 11-page affidavit, and it included a recitation of the fact that the identification was from this Mr. Walker, who was a real person, and then there was the whole fight, I thought, over the readback as to whether, in fact, it could be shown that he was – that he, the defendant, was shown this affidavit. Isn't that right? I mean, wasn't that the bulk of your evidence? Your Honor is absolutely correct. That – That's correct. But that – but I'm still trying to figure out why you draw the inference from the fact that he used it for all those various aspects of credit. Why the correct inference from that is that it was a real person. Just setting aside that other evidence for a minute. Setting aside the bulk of the evidence for a moment. No, just that – I mean, we didn't – there wasn't any evidence that he had actually read that affidavit. But, I mean, I know that evidence was in it, but he said he didn't – he didn't recall reading it or whatever. But all you could – the evidence was that he was given the affidavit, and the inference from that was that he read it. But you're saying the use, the use of it – and, obviously, I'm interested in this more even as a conceptual matter because of a line of cases from Flores, and I think the one – the opinion that I wrote that on the other – you know, the other aspect of the real person, that it could be – the person could be dead or alive. And so I'm interested in how you draw that inference. And the way to draw the inference is that if somebody, hypothetically, was going to go purchase an identity for a one-time use, it's more likely that the identity was fabricated. But if someone wanted to use that identity for all purposes in life – getting a passport, getting a driver's license, submitting it to the IRS, all of those things – then that person would more likely want to get an identity that belonged to a real person because, presumably, when the identity is used, it's being cross-checked by these various government agencies. Okay. If that answers the question. Yeah, yeah. And under double-counting – general double-counting principles, there is no double-counting here because the full harms that are addressed by each of these – by the 1028 A and also by the passport enhancement are – there's no complete overlap, and that's what Gallegos requires. And if the Court has no further questions regarding the passport issue. Can I just ask you about the acceptance responsibility? Apparently, the judge was quite distressed that the defendant did not speak with the probation officer, and the judge also made an assessment that the person didn't appear to be accepting responsibility or cognizant of the fact that he had committed a wrong. Is that right? And what was the evidence in that regard? I think there's more to that, Your Honor. I think what the district court judge was presented with was that we have a defendant here that went to trial depriving himself of valuable evidence of his acceptance of responsibility. And when he went to trial, he not only put the government to its burden, which the defendant has an absolute right to without precluding himself from receiving the acceptance, but not only did he put the government to its burden, but he got on the stand and he lied. And he lied, and the jury found that he lied. And based on that, the district court – in addition, the district court noted that defendant's statements about his acceptance of responsibility of the passport count at trial was unconvincing because, as the government pointed out in its papers, it was merely just a trial tactic to try to get the jury to believe in him and to find him not guilty on the aggravated identity theft count. And more importantly, I would like to make a very important distinction, Your Honor, in that the district court did not state that defendant is not entitled to acceptance because he failed to speak to the probation officer at all, but rather because he failed to demonstrate any contrition or responsibility to the probation officer. And I think that's a – it's subtle, but it's a distinction that's important. And I think the bottom line here is we have a defendant who basically deprived himself of the valuable evidence for acceptance of responsibility, went to trial, lied under oath to the jury, and then failed to demonstrate any contrition to the probation officer. And under those facts, I would submit that this is not a rare case where the defendant went to trial and is still entitled to an acceptance of responsibility. Are you over your time? I have – No, that means you're over. That's not what you have left. It's red, though. Stop. Yeah, red means stop. Thank you. Thank you. Thank you. And I have just a couple of quick points. First of all, on the acceptance, it appears that the basis of the district court's denial was not – was a legal question on whether Mr. Dehaney had admitted all relevant conduct. She used the terms he might qualify if he admitted all relevant conduct. He isn't eligible because he didn't admit all relevant conduct, which is contrary to what the acceptance guideline requires. I thought she found that he lied about relevant conduct and related – or related offenses, which under 3C1.1 says that's obstruction and that's not acceptance of responsibility. She had found that previously, but she did not actually link – that wasn't her reasoning for denying acceptance. She had given obstruction, but that was not her basis for the acceptance denial in this case. And one other point about the overlap between the passport enhancement and 1028A, there is complete overlap of punishment of harms in the sense that matters. There's 24 months for 1028A. Part of that is meant to cover national security threats. Some of that is meant to cover financial harm to individual victims. Basically, here, the guidelines range for the four-level passport enhancement resulted in nine months for – on Mr. Dehaney's sentence, whether at the low or high end, it would be nine months. And the passport enhancement doesn't have to account for the financial victim. It only has to run the other way around. So we're saying by being convicted of 1028A and receiving the mandatory sentence that comes with that conviction, that harm of using the passport was built into that sentence when Congress enacted it. Thank you. All right. Thank you very much, counsel. United States v. Dehaney is submitted. And we'll go to United States v. Pereira-Rey.
judges: Sessions, Goodwin, Wardlaw